Guy Read, Appellee, v. Thomas J. Friel and Charles C. Renshaw, Trustees et al., Trading as Chicago Surface Lines, Appellants.

Gen. No. 43,506.

Heard in the first division of this court for the first district at the October term, 1945. ▮ Opinion filed January 7, 1946. Released for publication January 21, 1946.

FRANK L. KRIETE, W. F. MCLAUGHLIN and ARTHUR J. DONOVAN, all of Chicago, for appellants; WILLIAM J. FLAHERTY and JAMES O. DWIGHT, both of Chicago, of counsel.

EDWARD L. RICHTER and CLARENCE M. DUNAGAN, both of Chicago, for appellee; JOHN B. KING, of Chicago, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against defendants to recover damages for personal injuries claimed to have been sustained by him as a result of the negligence of defendants in starting a street car as he was in the act of boarding it. There was a verdict and judgment in plaintiff's favor for $1250. On appeal to this court the judgment was reversed and the cause remanded for the reason that the trial judge refused to consider the weight of the evidence in passing on defendants' motion for a new trial, and the cause was remanded with specific directions to the trial court to consider the weight of the evidence in passing on defendants' motion for a new trial. *Read v. Cummings*, 324 Ill. App. 607. Upon the remandment of the cause, defendants' motion for a new trial was again presented to the trial judge who, when considering our opinion seemed to confuse the duty of the trial judge to direct a verdict, with his duty when the verdict is returned in passing on the motion for a new trial. Our opinion is clear and explicit and the law as there announced is in accordance with all the decisions of our Supreme and Appellate courts, there is none to the contrary. We there cited the case of *Libby, McNeill & Libby v. Cook*, 222 Ill. 206, where the court considered the authorities on this question and said (pp. 212–213): "In passing upon a motion for a peremptory instruction the question of the preponderance of the evidence does not arise at all. Evidence fairly tending to prove the cause of action set out in the declaration may be the testimony of one witness only, and he may be directly contradicted by twenty witnesses of equal or greater credibility; still the motion must be denied, and if a verdict for the plaintiff follows, the question whether it is manifestly against the weight of the evidence is for the trial court upon motion for a new trial, and, in the event of that motion being overruled and a judg-

ment entered, for the Appellate court upon error properly assigned.''

So far as we are advised, the right and the duty of a trial judge to consider the weight of the evidence on a motion for a new trial has never been questioned in any case except the one before us. The law as stated in our former opinion in this case has been announced in many cases, a few of which, in addition to the *Libby* case above mentioned, are *Belden v. Innis,* 84 Ill. 78; *Westville Coal Co. v. Schwartz,* 177 Ill. 272-277; *Donelson v. East St. Louis Ry. Co,* 235 Ill. 625-628; *Liska v. Chicago Rys. Co.,* 318 Ill. 570-583; *White v. City of Bellville,* 364 Ill. 577-580; *Hunt v. Vermilion Co. Child Home,* 381 Ill. 29-34; *Millikin Nat. Bank v. Grain Co.,* 389 Ill. 196-200.

In the *Belden* case [84 Ill. 78] the court said (p. 78)·: ''It is the duty of every judge of the circuit court to give careful attention to every part of the testimony in each case, and to consider it with as much care as if the case were tried by the court without a jury. And in all cases where the verdict is manifestly and palpably against the weight of the evidence, the judge of the circuit· court should promptly take the responsibility of setting aside the verdict, without subjecting the parties to the delay and expense·of an unnecessary hearing of such questions in this court.''

In the *Westville Coal* case, [177 Ill. 272] the court said (p. 277) : ''The argument that the jury were not justified in crediting his statement because he was not corroborated but was contradicted by three witnesses, two of whom were examined on the subject in his own behalf, does not present the question of a want of evidence on the part of plaintiff, but rather that there was a clear preponderance on the other side. That question does not arise upon a.motion for a peremptory instruction, but is a question submitted to the court upon the motion for a new trial, and to the´ Appellate Court.''

In the *Donelson* case [235 Ill. 625] the court said (p. 628): "The constitution, which provides that the right of trial by jury as previously enjoyed shall remain inviolate, does not make the jury the final judges of the weight of the evidence, and if a verdict is manifestly against the weight of the evidence it is the duty of the trial judge to set it aside and grant a new trial, and a failure to do so is error, for which a judgment must be reversed," citing a number of early Supreme court cases.

In the *Liska* case [318 Ill. 570] the court said (p. 583): "The right of trial by jury constitutionally guaranteed is the right as it existed at common law and as it was enjoyed at the time of the adoption of the present constitution. It is the right to have the facts in controversy determined, under the direction and superintendence of a judge, by twelve impartial jurors who possess the qualifications and are selected in the manner prescribed by law. The jury's verdict must be unanimous, and it is conclusive, subject to the right of the judge to set it aside if in his opinion it is against the law or the evidence, and for that reason to grant a new trial."

In the *White* case [364 Ill. 577] it was said (p. 580): "When all the necessary elements of a cause of action are charged in a declaration or complaint and there is evidence in support of the plaintiff's case which, if taken as true, with all reasonable intendments therefrom most favorable to the plaintiff, tends to establish the negligence charged, the case should be submitted to a jury for its consideration. On the coming in of a verdict in such case in favor of the plaintiff the question as to the weight of the evidence is for the trial court upon a motion for a new trial (*Libby, McNeill & Libby v. Cook*, 222 Ill. 206; *Pollard v. Broadway Central Hotel Corp.*, 353 id. 312.)"

In the *Hunt* case [381 Ill. 29] which was a direct appeal from the Circuit court of Vermilion county, the

court said (p. 34): "On a motion for a new trial the court may weigh the evidence for the purpose of determining whether the verdict is contrary to the weight of the evidence, and, if the court so finds, a new trial should be granted. [Citing cases.] The court cannot properly consider the weight of the evidence on a motion for judgment notwithstanding the verdict."

And in the *Millikin* case [389 Ill. 196] it is said: "A motion for a new trial, however, raises other questions than those which can be determined upon a motion for judgment notwithstanding the verdict. The action of the court in giving or refusing instructions, in the admission or rejection of evidence, or other matters involving the conduct of the trial can be considered on this motion, and not on a motion for a judgment notwithstanding the verdict. And, in addition, and perhaps the most important of all, the court has a right to determine whether the evidence is sufficient to justify the verdict."

We refer to these cases not because they were necessary to a decision of the matter before us, because the question involved was decided by us on a former appeal where we announced the law in this case to be followed by the trial court, but we mention them here only to emphasize that the law in this state has always required the trial judge to consider the weight of the evidence when that point is made in passing on a motion for a new trial. In fact in the briefs filed in the two appeals from the judgment in this case, not a word has been said by counsel to sustain the statement of the trial judge that he had no power to weigh the evidence in passing on a motion for a new trial and of course no authority was cited because none could be found.

Counsel for defendants say that the court did not pass on the weight of the evidence in overruling its motion for a new trial and there is much to be said in favor of this argument. The court said: "I am just

not the judge of the weight. That is what the Supreme Court said over and over again. . . . The Supreme Court, over and over, have said the judge is not the judge of the weight. . . . I don't believe I am the judge of the weight;" and in referring to the opinion of this court-continuing said: "I don't believe that is the law as laid down by the Supreme Court decisions and by fundamental jury thought in text books or anything regarding a jury's right." The court referred to no case of the Supreme court or any other court or any authority, but of course there was none. Moreover we had settled the law applicable to this case on the former appeal. But further on, after considerable argument and statements by court and counsel, the court finally said: "I can't see that it is the right thing to have a new trial here at all. I don't think that is good law. But I am following the opinion now, finally, and saying—I think they will be satisfied —that I have carefully considered the weight of the evidence, the credibility of the witnesses, and I still refuse to grant a new trial." We think this indicates that the trial judge followed the opinion of this court and therefore the case is properly before us, although the court repeatedly said that he thought the preponderance of the evidence was in defendants' favor. Obviously the trial judge, under the law, is not warranted in granting a new trial merely because he thinks the verdict should have been for the other party. He must also take into consideration the fact that the jury saw and heard the witnesses, and found contrary to his impression, but it is his duty, as we pointed out in the former opinion, to consider the verdict of the jury in passing on the motion for a new trial.

Defendants contend that the verdict is against the manifest weight of the evidence. They say that the testimony of plaintiff, who was his only witness, was given in "a wavering, hesitating and doubtful manner and without support of facts or circumstances." And

that he was contradicted by three witnesses, two disinterested, and the street car conductor.

Plaintiff testified that he lived at 7604 Yates avenue, which is on the south side of Chicago; that he came down town on May 21, 1941, to attend to some business and that about 10:30 or 11 o'clock in the morning, he was in the act of boarding a southbound street car in Clark street, just north of Adams street, an east and west street; that he was out in the safety zone, the proper place in the roadway of Clark street, waiting for a southbound Clark street car which was within the block; that there was another southbound car in Clark street standing at the north crosswalk of Adams street. This car was not routed where he wanted to go; that about a car's length back of it the car which he wanted to board stopped. That this was too far north for him to board it; that the car started up and stopped for a second or two, or virtually stopped, and that as he took hold of the bar, it speeded up and crossed Adams street; that he was thrown to the pavement and injured. While he testified somewhat hesitatingly, we think this is a fair statement of the evidence and the jury was in a position to observe his demeanor and to value his testimony.

Nick Manos, called by defendants, testified that he was a worker in a defense plant; that he was on the rear platform of the street car in question when it came south in Clark street north of Adams; that after the car stopped and started up, plaintiff "made a run for the car and flipped the car and fell and the conductor gave the bell and the car stopped" in about six feet; that plaintiff tried to get on the back end of the street car but missed the last bar on the rear of the street car because it started up; that about four people got on the car at that place; that "This man who fell was not there at the time the car was standing still at any time. [That the light changed and the car started]. I first saw him I would say 2 seconds after

the car started to go;" that after the car again stopped in Adams street, plaintiff boarded it and started arguing with the conductor and that he wanted the conductor's and motorman's number. On cross-examination he testified: "The man made a run for the car and missed it. He started to run from the west curb of Clark Street," 10 or 12 feet from the street car track. "The man came from the sidewalk. He started to run from the sidewalk."

Robert Youngren, called by defendants, testified that he was a machine salesman; that he boarded the southbound Clark street car in question on Clark street just north of Adams; that his office was located in the building at the southwest corner of those streets. That there was a loading zone marked off by a white mark in Clark street where people boarded the street car; that when he got on the car it came to a dead stop; that he boarded the car from the rear platform and paid his fare; that the car started going south and that the plaintiff came and tried to board the car. That "he tried to catch that middle bar of the rear platform, and he missed that and he was bumped with the rear handle on the rear of the platform" and thrown to the pavement. That the conductor signalled and the car was stopped; that when he was standing in the loading zone before boarding the car, plaintiff was not standing in the loading zone; that he did not know where he came from. "As I was facing the conductor, just about ready to step back and this man attempted to grab the center bar of the rear platform and he missed catching it, and he was hit with the rear handle, and he was thrown to the pavement—. . . . I did not see him just before he attempted to grab the middle bar there. I was facing the conductor, so I didn't see him. At the time I saw this man attempt to board the street car, the rear platform was about parallel with the walk that goes from the west side of the street to the east side . . . on the north side of Adams

Street." That after the accident the car came to a stop with its rear platform about on the westbound street car track in Adams street; that plaintiff picked himself up, boarded the street car and when he got on he "cussed the conductor" and told him that he should have stopped the car and he didn't, and the conductor said he didn't see him. On cross-examination he testified that he did not notice anybody boarding the car at the time and place he did. That after he boarded the car he was facing south and paid his fare when the car started up. That all the time he was paying he was facing south; that he saw plaintiff attempt to grab the bar but did not see him when he left the west curb of Clark street; that when plaintiff got on the car he did not "cuss" the conductor but yelled loud at him and spoke in an excited voice.

Kieran Fogarty, conductor of the street car, called by defendants, testified that he had been a conductor for more than 14 years; that his car stopped on the north side of Adams street at the safety island and that 2 or 3 passengers got off, "Then I looked out and the green light was with us. I gave the bell," and just as the rear end of the car was crossing the north crosswalk of Adams street he saw plaintiff grab the rear grab handle. The car stopped in Adams street and then moved ahead so as not to block the traffic and stopped at the south side of that street.

We think we would not be warranted in saying that the verdict is against the manifest weight of the evidence. The jurors saw and heard the witnesses testify. They undoubtedly were familiar with the way street cars are operated, sometimes slowing up at the proper stopping place where persons are waiting to board the car and often starting ahead when they get the green light without waiting for the persons to board the car. The testimony of the witness, Manos, was much more favorable to defendants on cross-examination than in his direct examination. On cross-

examination he said he saw plaintiff start to 'run from the west curb on Clark street, etc. The jury probably did not give much credence to what he said. At any rate the question was for the jury, and the judge sustained the verdict saying (as above referred to): "I have carefully considered the weight of the evidence, the credibility of the witnesses and I still refuse to grant a new trial." In these circumstances we are not warranted in disturbing the verdict unless we are of opinion that it is against the manifest weight of the evidence. In our former opinion, after stating the law on the question of directing a verdict, we said: "But after the verdict is returned a different question arises. It is then the duty of the trial judge to consider the weight of the evidence and if he is of opinion that plaintiff has not proven his case by a preponderance of the evidence, taking into consideration the fact that the jury has found otherwise, it is his duty to set aside the verdict and grant a new trial. And if the court does not do so but overrules the motion and enters judgment and the case is then brought to this court, we are not authorized to disturb the verdict on this ground unless the verdict and judgment are against the manifest weight of the evidence. This court in passing on the question must take into consideration not only the verdict of the jury but the fact that the trial judge saw and heard the witnesses, overruled the motion for a new trial and entered judgment. It requires much more for this court to set aside a verdict and judgment than is required of the trial judge."

Defendants further contend that the court erred in giving instruction 7 at plaintiff's request which was a stock instruction which told the jury what they should consider in case they found for plaintiff. The objection is that it told the jury among other things, they might take into consideration plaintiff's suffering from such physical injuries if any "and such

future suffering and loss of health and disability, if any, as you may believe from the evidence before you in this case he has sustained or will sustain by reason of such injuries.'' And the argument is that there was no medical testimony introduced to sustain this or any other element of damages; that plaintiff had not seen a doctor about his foot which was injured, for about two years, and that the stinging pain that plaintiff testified he sometimes suffered in his foot was due to the injury or to neuritis or arthritis which the evidence showed plaintiff had prior to the accident.

Plaintiff testified that when he boarded the street car after the accident he had to take off his shoe and kept rubbing his foot which began to swell; that when the car arrived at 75th street where he changed cars to get to his home, he had difficulty getting his shoe back on his foot; that he could hardly walk across the street; that he went home and called Dr. Salmon and shortly thereafter his daughter took him to see the doctor who advised him to go to the hospital and get an X-ray which was done at the Englewood Hospital. That a plaster cast was there put on his foot. It went from just below the knee to near the instep; that he was hurt in the instep on his right foot and that it still hurt at the time of the trial, which was more than 2 years and 9 months after the accident. That he remained at the hospital just one day until the cast was placed on his leg; he then went home and had a pair of crutches which he used 2 or 3 weeks, then the doctor took the cast off, after which he got about on crutches which he used for a week or so; that the injury ached a little in his instep where he got the bruise; that it was ''still swollen and hurts me.'' That the pain was not constant ''unless I step on the ball of my foot it hurts me. If I walk any way fast it stings me. Weather changes do not affect me much. . . . My foot is still swollen but it is a hard swelling.'' That he hadn't put anything on his foot for about 2 years

when he last saw Dr. Salmon; that he called on that doctor 2 or 3 times until the cast was removed.

When plaintiff had finished his testimony his counsel stated to the court that he had requested Dr. Salmon to come to court, which he agreed to do as soon as he finished an operation, but after waiting awhile he did not appear and plaintiff closed his case.

Upon a careful consideration of the evidence we are unable to say. that the amount of the damages was so. excessive as to warrant interference on our part. The judgment of the Superior court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and NIEMEYER, J., concur.