No. 12639

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STEPHEN T. BUSH,

Plaintiff and Respondent,

-vs-

ALBERT D. WARDELL CONTRACTOR,
INC., A CORPORATION,

Defendant and Appellant.

---

Appeal from:  District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Clayton R. Herron argued, Helena, Montana

For Respondent:

Robert F. Swanberg argued and Arthur P. Acher argued,
Helena, Montana

---

Submitted: September 17, 1974

Decided: NOV 13 1974

Filed: NOV 13 1974

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This appeal arises from a personal injury action wherein plaintiff Stephen T. Bush was awarded a $50,000 judgment against defendant Albert D. Wardell Contractor, Inc. Defendant appeals from the judgment and the denial of its motions for a directed verdict, judgment notwithstanding the verdict, and new trial.

The case results from an accident which occurred on July 9, 1970, at the construction site of the Colonial Hilton Convention Center in Helena, Montana. Plaintiff was an employee of Lowe Construction Company, the general contractor of the project. Defendant was the subcontractor engaged by Lowe Construction Company to do the masonry work.

The plans called for the complex to be built as three separate buildings--the convention center and two wings which would house the sleeping accomodations. The two wings were to be separated from the center by one inch of free space, a measure designed to reduce damage in the event of an earthquake.

It was at the point where the center was to parallel one of the wings that the accident occurred. The wings had been constructed first, and construction had begun on the building that was to be the convention center. At the point where the incident occurred, there were to be three walls raised in positions roughly represented by the following diagram:



sleeping quarters

8" block wall

1"

1/2"     4"masonry wall which fell

6" stud wall

convention center

The eight inch block wall had already been completed and formed the end wall of one of the wings. During construction, metal ties had been inserted in the eight inch block wall with the intent that they would be joined to the four inch wall when it was built as a means of stabilizing the latter wall.

However, the architect's plans required that there be no ties between the two walls. Defendant and the general contractor were concerned about this requirement, since the wall would be unstable unless supported by some means.

After much discussion, the general contractor told defendant to build the four inch wall using the stablizing ties, although the number of ties to be used was not specified. Defendant then constructed the four inch wall to a height of eighteen feet, using some of the ties which were protruding from the eight inch wall, but bending a majority of them over rather than attaching them.

Although the plans called for the wall to ultimately reach a height of twenty-six feet and no direction had been given as to whether it should be built in entirety or in stages, defendant's crew left the site after raising the wall to eighteen feet. The four inch wall then stood for approximately a week before the general contractor's crews constructed and erected several panels of the six inch stud wall next to it. The stud wall panels were constructed on the ground and then raised to their final position within one-half inch of the four inch wall.

On the afternoon of the accident, two of the panels had been raised and positioned several hours before plaintiff began hand tightening nuts on the bolts which anchored the panels to the floor. As he was doing this the portion of the four inch wall which extended above the stud wall collapsed, showering plaintiff with bricks and mortar. The injuries he sustained are those for which compensation was sought and granted in the district court.

Defendant appeals the verdict and judgment here, raising nineteen issues in its appellate brief. For purposes of this opinion, the questions raised in those nineteen issues will be considered as they relate to the four general issues:

1. Was the defendant negligent?

2. Was the defendant's negligence, if any, the proximate cause of plaintiff's injuries?

3. Were the damages which the jury awarded supported by admissible evidence?

4. Should the district court have granted a directed verdict, a judgment notwithstanding the verdict, or a new trial?

Plaintiff's complaint alleged four separate grounds of negligence: (1) Failure to attach the stabilizing ties; (2) Failure to brace the wall by some external means; (3) Erecting the wall to a height of eighteen feet instead of doing it in stages as the interior construction progressed; and (4) Failure to warn plaintiff or the general contractor of the dangerous instability of the wall. Defendant denies that any of these counts constitute negligence.

Defendant argues that some of the ties were used, even though the architect's plans required that none be installed. It cites 13 Am.Jur.2d, Building and Construction Contracts, § 140, for the proposition that defendant's following of the plans relieved it of all liability. The pertinent portion of that section reads:

> "* * * a contractor following plans and specifications given to him, and which a reasonable man would follow, is not liable for injuries resulting from the structure." (Emphasis added).

However, cases footnoted in support of that proposition clearly establish that the subcontractor is still liable unless a contractor of average skill and ordinary prudence would have followed those specifications. Ryan v. Feeney & S.Bldg. Co., 239 N.Y. 43, 145 N.E. 321, 41 A.L.R. 1; Tipton v. Clower, 67 N.M. 388, 356 P.2d 46. Since all the persons involved in this incident

agreed that an unsupported, four inch wall of this height would be dangerously unstable, the evidence at least created a jury question as to whether a reasonably prudent and skillful contractor would have acted as defendant did.

The same considerations would apply to defendant's failure to externally brace the wall, and to defendant's one-step construction to a height of eighteen feet. It is true that no one told defendant to use braces or to proceed in steps, but the jury properly could determine whether a reasonable man with defendant's knowledge of the wall's instability would have taken such precautions.

Defendant also contends there was no duty to warn since the general contracor was on the site throughout the time the wall was under construction. It is suggested the general contractor knew, or should have known, that the ties were not used. However, the general contractor's foreman testified he thought the ties had been used, and a reasonable inspection would not have proved otherwise. Again, there was evidence on which a jury might reasonably conclude that defendant should have warned others, but failed to do so.

Since it appears from the record that a jury could reasonably conclude that defendant was negligent in some or all of the alleged acts or omissions, we then must explore the contentions that there were intervening causes which relieved defendant of liability for its negligence. The first suggestion is that the general contractor accepted the completed wall with knowledge of its unstable condition, and therefore the negligence which proximately caused plaintiff's injury was the general contractor's failure to provide for his employees' safety.

If those were the facts here, defendant's contention would have some merit. As suggested by defendant, the case of Sumner v. Lambert, 96 Ohio App. 53, 121 N.E.2d 189, 198, would then be close to this case on its facts. However, as previously discussed, there was evidence the unstable condition of the wall

was unknown to anyone but defendant. This in itself would make Summer inapplicable, for that opinion clearly states:

"In the case at bar, it is not alleged that there were any hidden defects in the excavation, known to the defendants and unknown to * * * [decedent]".

Furthermore, there are factual questions in the instant case as to whether the wall was completed (even defendant testified that it was not) or as to whether the general contractor accepted the wall. There clearly is not sufficient evidence to warrant a reversal on this point.

The other intervening cause suggested by defendant is that the stud wall allegedly struck the masonry wall during the process of raising the former to its position. Plaintiff produced witnesses who participated in the raising of the wall who testified that the stud wall did not strike the masonry wall. Defendant elicited testimony from after-the-fact witnesses to the effect that the physical evidence clearly showed that the stud wall struck the masonry wall. Defendant would have us prefer the opinions based on the physicial evidence over the testimony of eyewitnesses. While it is true that undisputed physical facts control over testimony (Hayward v. Richardson Const. Co., 136 Mont. 241, 347 P.2d 475, 77 ALR2d 1144), that control is effective only when the physical facts admit of only one interpretation. The physical fact involved here is that the masonry wall fractured and fell at approximately the level of the top of the stud wall. However, the evidence also indicates that the masonry wall stood for several hours after the stud wall was raised. Furthermore, the evidence might be interpreted to mean that the stud wall prevented the masonry wall from collapsing at a lower level by acting as a brace against that portion of the wall. Again, it was a question for the jury to determine.

Having determined there was sufficient evidence to support a jury finding of liability, we look to the admissibility of the evidence which the jury used to arrive at a damage figure. Defendant's challenge to the damages is that the court allegedly

admitted a doctor's opinion which was based, at least in part, on the plaintiff's subjective complaints. It is true that the testimony objected to was that of a doctor who treated the plaintiff at the time of the accident and then did not see him again until shortly before the trial. However, the record indicates that the doctor's opinion of the degree and permanency of plaintiff's injuries was given in response to a question asking him to disregard the plaintiff's subjective complaints. The doctor's initial treatment of the plaintiff, his subsequent examination, and his reading of the reports of other treating physicians surely qualified him to give such an opinion without reference to the subjective complaints. Also the jury was cautioned not to consider any testimony as to these subjective complaints. We find no error here.

Defendant also argues that evidence and instructions relating to mortality and annuity tables should not have been given to the jury. The objection is that even at the time of trial plaintiff was making more money than he was at the time of the accident and therefore his earning capacity had not been impaired by his injuries.

While the use of such tables clearly shows that the jury considered plaintiff's loss of future earnings, we find that such consideration was warranted by the evidence. The construction job which plaintiff held when he was injured was only summer employment to help finance his college education. By the time of the trial he had completed the necessary education to become a teacher and was employed in that capacity. His earnings as a teacher were higher than his earnings on the construction job.

Were this the only evidence, there might be some merit to defendant's contention. However the jury was also aware that teachers routinely seek other employment during the summer when school is not in session. It also heard testimony that plaintiff would not be able to coach any athletic teams, an activity which produces income in addition to the regular teaching salary.

These factors, combined with the limitations on plaintiff's enjoyment of his previously athletically oriented life indicate the introduction of the tables was clearly appropriate. Bracy v. Great Northern Railway Company, 136 Mont. 65, 69, 343 P.2d 848.

The final question then is whether the court should have directed a verdict, granted a judgment notwithstanding the verdict, or granted a new trial. As discussed heretofore, we have found no error in the legal theories involved here. Those theories were reflected in the instructions given to the jury, and we find those instructions to be appropriate.

Therefore, finding no error of law, and substantial evidence supporting the verdict, we affirm the judgment.

_Frank I. Haswell_
Justice


We Concur:

_____
Chief Justice

_Gene B. Daly_

_Wesley Castles_

_John Conway Harrison_
Justices.