Leslie Rebecca MARINER (formerly Leslie Rebecca Charles), Appellant (One of defendants below),

John Smith and Diane Smith, (Other defendants below)

v.

Gary Lee MARSDEN, Appellee (Plaintiff below).

No. 5199.

Supreme Court of Wyoming.

April 9, 1980.

Cameron S. Walker, of Schwartz, Bon & McCrary, Casper, for appellant.

W. A. Smith, Lander, and Robert M. Seipt, Riverton, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

Appellant, Leslie Rebecca Mariner, one of the defendants below, appeals from a judgment entered against her for damages arising out of an automobile accident in which she was operating one vehicle and Highway Patrolman Marsden was operating the other. At trial, appellant conceded liability and damages of approximately $3,000.00 for past medical expenses, lost wages, and damage to personal property. The trial judge, sitting without a jury, awarded these damages as well as the following damages, which have become the subject of this appeal: [1]

Past Pain and Suffering ........... $19,500.00
Future Pain and Suffering ......... 5,000.00
Loss of Enjoyment to Plaintiff's Life .. 25,000.00

Appellant argues that the awards—which were not based on any testimony by medical experts—were unsupported by the evi-

---

1. The judgment was as follows:

| "Past Medical Expenses | $ 1,421.00 |
| --- | --- |
| Future Medical Expenses | 0 |
| Past Pain and Suffering | 19,500.00 |
| Future Pain and Suffering | 5,000.00 |
| Personal Property Lost or Damaged | 182.50 |
| Loss of Past Wages | 1,346.42 |
| Loss of Future Wages | 0 |
| Loss of Enjoyment to the Plaintiff's Life | 25,000.00" |

dence, excessive, and were the result of the trial judge's passion and prejudice. Appellant also argues that the award for loss of enjoyment of life was improper because it was not pleaded and because it is cumulative to the awards for pain.

We will affirm.

### EVIDENCE

The only evidence in the case appears in the form of the testimony of Gary Lee Marsden, appellee, and Homer Small, the highway patrolman who helped Marsden into an ambulance after the accident. No professional medical evidence was submitted—a tactic which, we suggest, reeks of risk.

Marsden, at the time of the accident, October 11, 1974, was a Wyoming Highway Patrolman and was injured while driving his patrol car. The vehicle, a Buick LeSabre, was severely damaged in the collision with the automobile operated by the appellant. A photograph admitted into evidence reveals extreme impact damage with large portions of the driver's side of the patrol car sheared away by the impact. Officer Small contributed to the foundation for the admission of the photograph when he related how he had helped Marsden into an ambulance. Among other things, Small said that Marsden had protested when he attempted to loosen the top button on Marsden's shirt, thus indicating Marsden's pain, discomfort, or tenderness. Small was not cross-examined.

Marsden, when asked to describe his condition after the collision, said:

".  .  . I had a cut on the forehead; a cut on the back of my head; I had a swollen mouth; some loose teeth; a crown that was missing had been knocked off of one tooth. I had a tooth chipped and a sore neck; a bruised hip; and general bruises around my body."

The appellee testified that he received out-patient treatment at a hospital for these injuries immediately after the accident—that prior to the accident he had never experienced any neck pain. He testified that, following the accident, he experienced pain all over his body but especially in his neck whenever he made certain movements. He said that his jaw had been cracked and he had had to undergo some painful dental work.

The appellee testified that the neck pain persisted and that a myelogram, a diagnostic procedure, was administered. He related that the aftereffects of the myelogram was "one of the most uncomfortable times of my life" with nausea, vomiting and severe headaches. The myelogram coincided with a five-day stay in the hospital for diagnosis and therapy of the neck pain. As an out-patient, Patrolman Marsden continued heat, massage and therapy treatment— and such treatments continued up to the time of trial.

Marsden testified that in the interim between his treatments he experiences a sharp pain along with, "terrible splitting headaches that accompanied with this nausea. It was a nausea to the point of vomiting." The case was tried in July of 1979 and Marsden testified that ever since the accident on October 11, 1974, he had suffered neck pains between three and ten times a month. Sometimes the pain was just an annoyance and sometimes it prevented him from turning his neck.

Marsden explained that he had recently completed some schooling at the FBI academy but it had been painful for him to complete the physical-training portions of the program. He also testified that the neck injury interfered with some of his duties and that he worried a lot about being discharged from the Highway Patrol. He further testified, however, that since the accident he had received two promotions to his current rank of lieutenant and his salary had more than doubled.

It was Officer Marsden's testimony that the neck pains caused him to quit playing with his children as much as he had before the accident. He said that he had discontinued his former athletic activities because, "the pain just isn't worth the reward that I have gained from playing basketball, tennis, racquet ball or any of the other activi-

ties." Hunting was often painful and it had become necessary for him to stop dancing with his wife. Marsden also said that since the accident he was unable to drive a car for as long a stretch as he could before the accident.

On cross-examination, Marsden conceded that his two promotions since the accident were based on performance but said he was not advancing as rapidly as he would like. Also, on cross-examination, the witness admitted to hunting a deer every year for the past ten years, to fishing, and to doing a lot of target practicing. He admitted that he had hunted elk in rough terrain on foot since the accident. He acknowledged passing physical exams in order to stay in the Highway Patrol and in order to attend the FBI school, and admitted to jogging or attempting to jog a couple of miles a day in 1979. Marsden agreed that his job as a lieutenant was largely sedentary as compared to his former job as a patrolman.

## REMARKS BY THE TRIAL JUDGE

Appellant alleges passion and prejudice on the part of the trial judge in this court-tried case. She points to the following remarks by the trial judge, which she claims shows his prejudice.

In a discussion between the two attorneys and the judge before the introduction of evidence, the plaintiff's counsel said that he planned to introduce a few photographs of the wrecked cars to show the force of the collision. Defendant's counsel stated that he thought the photos were unnecessary since liability was conceded. Plaintiff's counsel responded and the following exchange ensued:

"MR. SMITH [Plaintiff's counsel]: We're talking about a neck injury to the spine and I'll concede right now we can't get a doctor to X-ray the spine and find what's causing him his trouble.

"THE COURT: Probably a soft tissue injury and you couldn't find it anyway."

The defense counsel had earlier moved *in limine* to prevent the facts of the accident from being introduced on the ground that the defendant was conceding liability. The

court's response was: "Now, you know, with the Court it probably doesn't make any difference because, you see, I've read the file." The court then recited and discussed some of the facts of the accident.

The judge also inquired of defense counsel concerning the limit of the defendant's liability insurance coverage. However, the judge informed the defense counsel that he need not discuss the matter with the court and the defense counsel accepted the option of not disclosing the insurance liability limit to the judge.

Finally, the appellant objects to the fol lowing exchange which took place when the defense counsel was attempting to impeach Marsden's testimony about the effects of the accident on his ability to function at work:

"THE COURT: You see, the problem is, Mr. Walker, like a lot of people who are injured, he's put in a real dilemma. Let's say he ways [sic] 'Yes.' The Highway Patrol get ahold of that deposition and they don't want him to be a patrolman anymore, it's pretty good evidence for them that he has said that he's not capable of performing his duties because of his physical condition. And if he says it he's on the horns of a dilemma and I have seen this happen and on the one hand he's probably entitled to some recovery as a result of the defendant's negligence.

"On the other hand, to prove his damages he can prove it in one way which would be detrimental to his job in another way. And what would you expect him to say to that? He's in a tough spot.

"MR. WALKER: Under oath I would expect him to tell the truth, sir.

"THE COURT: Well, you know, he probably did but he's still in a tough spot. It's just one of those things of life. It's a tough kind of a case for a State employee to present to a Court or jury. It could cost him his job in some ways. Go ahead."

## THE PROCEDURAL DEVELOPMENT

The complaint filed by the plaintiff alleged personal injury and asked for com-

pensation for past and future medical costs, past and future pain, past and future loss of earnings, loss of personal property and such other and further relief as the court deems just. The plaintiff's pretrial statement represented that the plaintiff would prove "medical expenses, lost personal property, pain and suffering, and other damages claimed." The joint pretrial memorandum states that "plaintiff has filed suit seeking past and future medical expenses, past and future pain and suffering, injury to personal property, and past and future loss of earnings." The trial judge's pretrial conference report and order incorporate the joint pretrial memorandum by reference. At the trial, the following discussion of the issues took place before any witnesses were called:

"THE COURT: All right. . . . Future medical expense, we don't know. Past pain and suffering, we don't know.

. . .

\* \* \* \* \* \*

"THE COURT: . . . Past Loss [sic] wages.

\* \* \* \* \* \*

"THE COURT: And future lost wages, we don't know. And future pain and suffering, we don't know.

"MR. WALKER [defendant's counsel]: Correct, your Honor.

"THE COURT: So those are really the issues before the Court in this case.

"MR. SMITH [plaintiff's counsel]: Right.

2. Appellant denominates these issues:
"1. Are the trial court's awards of damages for future pain and suffering and loss of enjoyment of life supported by the evidence? [sic] adduced at trial?
"2. Are the trial court's awards of damages for loss of enjoyment of life and future pain and suffering contrary to the evidence? [sic] adduced at trial?
"3. Did the court in its award of damages for past pain and suffering include an award for certain alleged neck injuries which were not supported by the evidence?
"4. Was an award for loss of enjoyment of life proper where the parties stipulated to the issues to be tried, and loss of enjoyment of life was not one of the issues presented to court, or pled by the plaintiff?

"THE COURT: All right."

The evidence which supports the loss-of-enjoyment-of-life claim is plaintiff's testimony that he had been forced, since the accident, to discontinue or reduce many activities which he had enjoyed prior to the accident. Such testimony was not objected to, but, of course, such testimony was also relevant to prove the existence of pain occurring after the accident.

In his judgment, the trial judge awarded the damages already discussed but denied recovery for future medical expenses and for future lost wages.

### THE LAW

Appellant's statement of the issues contained in her brief is confusing. As required by Rule 5.01(2), W.R.A.P., appellant's brief contains a statement of issues.[2] While this statement contains nine questions calling for decision, the argument section of the brief is divided into five main sections. In any case, we perceive the following taken from appellant's brief to frame the questions which are before us for resolve.

*Is an Award for Loss of Enjoyment of Life Precluded by the Procedural Development of This Case?*

■ Appellant alleges that the award for loss of enjoyment of life was a special damage and, in contrast to a general damage,

"5. Is loss of enjoyment of life a separately compensable item of damage in a personal injury case in Wyoming? If so, under what circumstances?
"6. Was a damage award for loss of enjoyment of life proper under the circumstances of this case?
"7. Was the court's award of separate damages for past pain and suffering, future pain and suffering, and loss of enjoyment of life cumulative?
"8. Are the court's damage awards for past pain and suffering, future pain and suffering, and loss of enjoyment of life based upon passion or prejudice?
"9. Are the damages awarded by the court in this case for past pain and suffering, future pain and suffering and loss of enjoyment of life excessive as a matter of law?"

was waived because it was not specifically pleaded. We disagree and hold that loss of enjoyment of life is a general damage.

Appellant cites to *Henderson v. Coleman*, 19 Wyo. 183, 115 P. 439, 448 (1911), for this definition of general and special damages:

"   .   .   general damages are those which necessarily and by implication of law result from the wrong complained of, and special damages are those that are the natural but not the necessary result of such wrong.   .   .   ."

In *Hein v. Marcante*, 57 Wyo. 81, 113 P.2d 940, 948 (1941), we elaborated on this distinction:

"   .   .   What is this special damage which cannot be proved without being specifically alleged? There is certainly a lack of clearness in the authorities on the subject; but it seems to us that what are called 'general damages,' as contradistinguished from 'special damages,' are admitted in evidence under a general allegation—indeed, are inferred by the law itself—for the reason that they are the immediate, direct, and proximate result of the act complained of, as, for instance, an injury done to the property itself, or its value, by detention, etc.; while damages which, although the natural, are not the necessary, consequence of the act, being   .   .   consequential in their nature, .   .   ."

Under this distinction, it would appear that loss of enjoyment of life, flowing directly from injury sustained in the accident, is a general damage. The Supreme Court of Louisiana provides us with more precise authority for the proposition that loss of enjoyment of life is a general damage. In *Anderson v. Welding Testing Laboratory, Inc.*, La., 304 So.2d 351, 352 (1974), they said:

"The trier of fact is granted much discretion in the award of *general damages*, i. e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the *loss of gratification of intellectual or physical enjoyment*, or other losses of life or life-style which cannot really be measured definitively in terms of money.   .   .   ." (Emphasis supplied.) Cited with approval in *Boswell v. Roy O. Martin Lumber Co., Inc.*, La., 363 So.2d 506, 507.

Also, in point is *Sterling Products, Inc., v. Fields*, Tex.Civ.App., 530 S.W.2d 602, 605 (1975), where it is said:

"   .   .   The term 'general damages' is applied to loss, damage or injury which is conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract or wrongful act, whereas, 'special damage' signifies injurious consequences which are not deemed as a matter of law to have been foreseen, .   .   ."

Certainly loss of enjoyment of life is a consequence of an injury which the law would deem to be foreseeable.

Appellant also urges that the conversation among the trial judge and the two counsel at the start of the trial prevents the award of compensation for loss of enjoyment of life inasmuch as plaintiff's counsel indicated that he was only pursuing certain claims among which was not a claim for loss of enjoyment of life. In evaluating this argument, we find *Walton v. Atlantic Richfield Company*, Wyo., 501 P.2d 802, 805 (1972), decisive. We said:

"Appellants' contention that the trial court was bound in determining the proper measure of damages to the theories of counsel and that this determination must necessarily include the value of the lease at the time of the loss does not consider the effect of Rule 54(c), W.R.C.P., which is as follows:

"'* * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.'"

We hold that the procedural aspects of this case do not preclude an award for loss of enjoyment of life.

*Is Loss of Enjoyment of Life Compensable
in Addition to Compensation for Pain
and Suffering?*

■ We have discovered no Wyoming case dealing explicitly with an award for loss of enjoyment of life. In *Fox v. Fox*, 75 Wyo. 390, 296 P.2d 252, 262 (1956), we held that loss of mobility may be compensable even if it doesn't result in loss of earnings because mobility "is the right to be a normal human being." This suggests that appellee's neck injury, which has caused him to curtail some of his physical activities, should be compensable because it has deprived him of ordinary human pleasures.

A Colorado court has definitively stated:

"Defendants object to an instruction given by the trial court which advised the jury that in assessing actual damages, they could consider, *inter alia*, the loss of enjoyment of life. It is not error for this element to be included in an instruction where evidence of such has, as here, been introduced during trial. [Citation omitted.]" *Hildyard v. Western Fasteners, Inc.*, 33 Colo.App. 396, 522 P.2d 596, 601 (1974).

In upholding a one million dollar personal injury award to a plaintiff rendered quadraplegic, the Supreme Court of Minnesota recently said:

"The award . . . was clearly not excessive, given the settled factors applicable to the assessment of personal injuries: Past and future pain and suffering, permanent disability, life expectancy, loss of earning power, *the effect on plaintiff's enjoyment of the amenities of life*, degree of disfigurement, and the inflationary trend of the economy. . . ." *Ossenfort v. Associated Milk Producers, Incorporated*, Minn., 254 N.W.2d 672, 685 (1977). (Emphasis supplied.)

See also, *Bush v. Albert D. Wardell Contractor, Inc.*, 165 Mont. 312, 528 P.2d 215, 219 (1974).

A Nebraska Supreme Court decision is particularly helpful to us:

"The defendant contends the court erred, in including as a part of its general instruction on damages for a personal injury, a statement that the jury could 'take into consideration' the 'loss of enjoyment of life experienced and reasonably certain to be experienced in the future.' *The argument is that this part of the instruction represents a duplication of the elements of permanent disability and of pain and suffering, and thus the jury was permitted to award double damages for the same loss.* There was evidence introduced to support the plaintiff's diminished capacity to enjoy life with respect to activities formerly enjoyed, deprivations of pleasure, and inconvenience.

". . . A majority of courts, however, have approved inclusion of loss of enjoyment of life as a consideration that may be instructed upon in a proper case and be considered by the jury . . .

"Loss of enjoyment of life may, in a particular case flow from a disability and be simply a part thereof, and where the evidence supports it, may be argued to the jury. A separate instruction therein may be redundant. We do not recommend such an instruction be given, but find that under the facts of this particular case, where there is evidence from which the jury could find the injuries and resulting disability did cause loss of enjoyment of life, there was no error in giving the instruction, and we do not believe the jury was in any way misled." (Emphasis supplied.) *Swiler v. Baker's Super Market, Inc.*, 203 Neb. 183, 277 N.W.2d 697, 700 (1979).

In view of the above authorities, we hold that loss of enjoyment of life is a compensable damage. Since loss of enjoyment of life is compensable, the fact finder—in a case in which loss of enjoyment of life is proved—may either make a separate award for loss of enjoyment of life or take into consideration the loss of enjoyment of life in arriving at the total general damages.[3]

---

**3.** In arriving at this conclusion, we have carefully considered the ten cases cited on page 19 of the appellant's brief for the proposition that loss of enjoyment of life is not a separately

In either case, it is the total award for general damages to which an appellate court must look to determine if the general damages awarded are supported by the evidence, whether they are excessive or insufficient, or whether they are the result of passion and prejudice.

### What is the Consequence of the Absence of Medical Testimony to Support The Awards for Pain and Suffering?

Our review of the caselaw of other jurisdictions indicates that lay testimony is sufficient to establish a claim of past pain and suffering.

At 3 *Proof of Facts*, Proof 35, p. 744 (1959), it is said:

". . . Ordinarily, the only way to prove the existence of pain is through the declarations of the person who claims to have experienced it. . . ."

The treatise goes on to point out that because the plaintiff's claim of past pain is self-serving, the plaintiff runs the risk that the fact finder will not be convinced unless presented with medical proof of pain. *Id.* However, clinically verifiable symptoms of pain are not always present. *Id.*, at 745.

If the plaintiff, bearing the risk of non-persuasion, chooses to present his claim of past pain without medical experts and the fact finder decides to credit his claim, most appellate courts perceive no impediment to upholding the award. *E. g., Capelouto v.* *Kaiser Foundation Hospitals*, 7 Cal.3d 889, 103 Cal.Rptr. 856, 500 P.2d 880, 885 (1972); and *Ostreng v. Lowrey*, 37 Wis.2d 556, 155 N.W.2d 558, 562 (1968). Accordingly, we do not consider the lack of expert medical testimony fatal to the award for past pain and suffering.

The award of $5,000.00 for future pain and suffering has caused concern since the plaintiff chose not to support this item of damage with medical testimony. After reviewing the authorities that have addressed this question, we have determined that a majority of the courts do not require medical testimony before the trier of fact can award damages for future pain and suffering, if there is evidence of continuing pain. A greater number of courts allow recovery for future pain and suffering without medical testimony than courts denying recovery.

While a few courts have held that medical testimony is always necessary to prove future pain and suffering, *Lucas v. State Farm Mutual Automobile Insurance Co.*, 17 Wis.2d 568, 117 N.W.2d 660, 662 (1962), *certiorari denied* 373 U.S. 922, 83 S.Ct. 1522, 10 L.Ed.2d 423, *rehearing denied* 374 U.S. 818, 83 S.Ct. 1694, 10 L.Ed.2d 1043, as a general rule courts have considered the nature of the injury, *Sierra Pacific Power Company v. Anderson*, 77 Nev. 68, 358 P.2d 892, 895–896 (1961), and the length of time that the injured party has suffered pain. *Bitzan v. Parisi*, 88 Wash.2d 116, 558 P.2d 775, 779 (1977).

---

compensable item. The dates of these cases range from 1890 to 1949, with all but two of them having been decided within ten years of the turn of the century. Many of them stand for the obsolete—in view of the authorities cited above—proposition that the fact finder may not consider loss of enjoyment of life in compensating a plaintiff for a personal injury. However, two of the citations merit discussion. In *Hogan v. Santa Fe Trail Transp. Co.*, 148 Kan. 720, 85 P.2d 28, 120 A.L.R. 521 (1938), the court held that a jury award of $4,000.00 to a plaintiff for loss of enjoyment in playing the violin was improper. The court discussed whether loss of enjoyment of life was a compensable damage and concluded that "loss of enjoyment resulting from being unable to play the violin is too speculative . . . ." *Hogan*, supra, 85 P.2d at 33. In *Winter v. Pennsylvania R. Co.*, 45 Del. 108, 68 A.2d 513 (1949), a salesman who played the piano on the side sustained an injury which interfered with his piano playing. In the years previous to the injury the plaintiff had not received cash for his musical endeavors but had received free trips and accommodations. The court held that the monetary value of these benefits could be compensated but held improper separate compensation for loss of "mental and spiritual comfort enjoyment" from playing the piano. The court stated that such loss was not separately compensable in Delaware but indicated that the loss might be considered in computing the damages for permanent impairment of the plaintiff's finger. The case was an appeal from summary judgment and by Shepardizing it, we have been unable to determine if the plaintiff ultimately recovered compensation based on his loss of enjoyment from playing the piano. In view of the authorities discussed in the text, we conclude that the authorities cited by the appellant are not controlling.

The following cases illustrate the decisions that have not required medical testimony for recovery of future pain and suffering, if there is evidence of continued pain at the time of trial. In *Bitzan, supra,* 558 P.2d 775, a man injured in an automobile collision, who suffered injuries to his back and neck, testified that he was still suffering from the back injury resulting in disability and a loss of earnings at the time of trial two years after the collision. The Washington Supreme Court held that lay testimony was sufficient to support an instruction of future damages. In so holding, the court stated:

"Proof of pain and suffering as late as at time of trial even though subjective in character will warrant instruction on future damages. . . . The continued existence of these elements of damage at the time of trial permits a reasonable inference that future damage will be sustained. Expert medical testimony to this effect . . . is not essential. . ." *Bitzan, supra,* 558 P.2d at 779.

In an action for personal injuries sustained by plaintiff, a hotel guest who fell from the top of a seawall adjacent to her room when struck by a gust of wind, the Supreme Court of Oregon allowed an instruction on future pain and suffering where the evidence presented at trial established that the plaintiff's pain continued at the time of trial. *Nelson v. Tworoger,* 256 Or. 189, 472 P.2d 802, 803 (1970). The appellate court did not discuss the nature of the injury.

Likewise, in *Mabrier v. A. M. Servicing Corporation of Raytown,* Iowa, 161 N.W.2d 180, 183 (1968), the Iowa Supreme Court stated that "[i]n Iowa, when pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony." The action was brought by a woman who had sustained elbow and knee injuries in a fall in defendant's store.

In *Castro v. Giacomazzi Bros.,* 92 Cal. App.2d 39, 206 P.2d 688, 693 (1949), the court held that medical testimony was not necessary to prove future pain when evidence produced at trial showed that the injured plaintiff was still experiencing pain at the time of trial. As the court stated:

"Mrs. Castro testified that she still suffered from the injuries at the time of the trial some two years after the accident, and that she had been unable to work since the date of the accident. The jury had an opportunity to observe each plaintiff and determine the probability of continuance of the present physical conditions—the pain previously suffered and the probability of a continuation of that suffering. It was not necessary to produce an expert witness on the subject of pain or future earning ability. . . ."

Mrs. Castro had been injured in an automobile collision, suffering two broken ribs, an injured knee, soreness in the neck and blurry vision in one eye.

The court in *Read v. Friel,* 327 Ill.App. 532, 64 N.E.2d 556 (1946), held that a jury had the right to be instructed on future pain and suffering even though there was an absence of medical testimony where there was evidence showing that unspecified injuries to plaintiff's instep of his foot which caused pain and swelling had existed for two years and nine months after the accident. Also see *Warp v. Whitmore,* 123 Ill.App.2d 157, 260 N.E.2d 45, 48 (1970).

For a comprehensive analysis of courts that have awarded damages for future pain and suffering, see 18 A.L.R.3d 10.

In this case, Patrolman Marsden was injured on October 11, 1974, when a car driven by Leslie Rebecca Mariner sideswiped Marsden's patrol car. The trial on the question of damages was held some five years later on July 17, 1979. During the trial, Marsden testified that he received a neck injury from the collision and that since the time of the collision he has suffered neck pains from three to ten times a month.

■ An award of damages for future pain and suffering is not dependent upon a finding of permanent injury. *Chaussard v. Kansas City Southern R. Co.,* Mo.App., 536 S.W.2d 822, 828 (1976). At the time of the

trial, the trier of fact is capable of inferring that the pain and suffering will continue for at least some time in the future. The continuing nature of Marsden's subjective injury warranted the award of $5,000.00 for pain and suffering. The trier of fact is capable of inferring that the pain and suffering will continue for some time in the future. In the case at bar, Marsden was awarded $19,500.00 for the pain and suffering he had experienced for the five years before trial. However, he was only awarded $5,000.00 for future pain and suffering. Therefore, it is fair to assume that the trier of fact determined that the evidence was insufficient to support the conclusion that the injury was permanent.

■ We agree with the courts that have held that if there is testimony that an injurd party is still experiencing pain at the time of the trial the trier of fact is capable of inferring that the pain and suffering will continue for at least some time in the future. The continuing nature of Marsden's injury warranted the award of $5,000.00 for future pain and suffering.

*What Is The Consequences of The Absence of Medical Testimony to Support The Causal Connection Between Appellee's Neck Pains And The Accident for Which Appellant Concedes Liability?*

■ Appellant maintains that medical testimony was necessary to establish a connection between the accident described above and appellee's neck pains. As described above, appellee testified to numerous head injuries which were received in the accident (cuts, loosened and broken teeth). It was his testimony that he experienced a sore neck immediately after the accident and that he had never had neck pains prior to the accident. It was his statement that after the accident, he experienced severe neck pains. We have already explained that the appellant was competent to establish his own post-accident pain. Medical testimony is not necessary to establish a causal link between a violent automobile collision and soreness and pain which begin immediately following the accident. *Bu-*

*randt v. Clarke*, 274 Or. 521, 547 P.2d 89 (1976).

*What Is The Consequence of Absence of Medical Testimony to Support The Award for Loss of Enjoyment of Life?*

■ The evidence which supports the award for loss of enjoyment of life is to the effect that in order to avoid or minimize pain, the plaintiff refrained from certain previously enjoyed activities. Since we hold that the plaintiff was competent to establish his post-accident pain, we see no reason why he wasn't competent to describe the steps he took to minimize or avoid the pain which resulted in a loss of the enjoyment of many of the pleasures of life that he had previously known. The only evidence given on the subject of loss of enjoyment of life related to the pretrial experiences of the plaintiff, and we, therefore, assume that it was for this loss that the enjoyment-of-life award was given.

*Excessiveness and Passion and Prejudice*

■ As we have already mentioned, the trier of fact chose to believe competent evidence that: (1) Post-accident, pretrial pain was experienced by the plaintiff (2) in order to avoid or minimize this pain, the plaintiff refrained from engaging in some of his accustomed pleasures of life, and (3) some pain was likely to occur in the future.

Thus, the only question which remains is whether the sum of $49,500.00 awarded for pain and loss of enjoyment of life is excessive or the result of passion and prejudice.

In *Fitzsimonds v. Cogswell*, Wyo., 405 P.2d 785, 787 (1965), appellant appealed the amount of a personal injury award given by a trial judge and we said:

"There was an accident and plaintiff was injured. It cannot be denied she has suffered loss from the accident. There was testimony tending to show she has had substantial pain and suffering, and according to the physician who treated her she is left with a worsened physical condition and continuing pain and discomfort. The amount of damages was within the sound discretion of the trial court, and we

cannot say there was an absence of evidence to support the award made.

"What we said in *Pan American Petroleum Corporation v. Like*, supra, [381 P.2d 70, 76 (Wyo.1963)] is particularly apropos here. The amount to be assessed for damages suffered by a plaintiff as a result of personal injuries is within the sound discretion of the trier of fact, unless the award is so excessive as to indicate passion or prejudice; and there is nothing in this case to indicate either passion or prejudice on the part of the trial judge." See also, *Vivion v. Brittain*, Wyo., 510 P.2d 21 (1973).

The appellant argues that a comparison of this award to other awards for similar injuries would show that this award is excessive. We stated in *Fitzsimonds v. Cogswell*, supra, at 787, that "We are sure counsel realizes that there is no way of obtaining uniformity in the amount juries and trial judges may award for damages in personal-injury cases." Because of the unique circumstances of each case as well as the adjustments which would necessarily have to be made for inflation, it is awkward to discuss the size of an award through comparison with past decisions. However, in researching other aspects of this case, we noted a 1972 decision from Missouri upholding against a charge of excessiveness an award of $30,000.00 for whiplash. *Warriner v. Eblovi*, Mo.App., 485 S.W.2d 700, 707 (1972). All but $1,512.15 of the ward was in the form of general damages. In *Warriner* the plaintiff had not suffered any pain other than the whiplash. In the instant case, the plaintiff clearly suffered pain from additional injuries. If allowance is made for this difference and for the marked erosion of the dollar since 1972,[4] the *Warriner* case would suggest that the amount awarded in the instant case is proper.

▪ Turning our attention to the remarks by the trial judge complained of by the appellant, we do not find evidence of passion or prejudice. Appellant complains that the trial judge supplied the missing diagnosis when he stated in response to a remark by plaintiff's counsel: "Probably a soft tissue injury and you couldn't find it anyway." However, this comment came directly after the plaintiff's counsel conceded that he couldn't provide medical evidence of the plaintiff's neck injury. *Obviously* the plaintiff was alleging some sort of cryptic injury. The trial judge's remark indicated that he was willing to entertain a claim for such an injury. His remark may have also revealed his experience that most claims for neck injuries are allegations of soft-tissue injuries which do not show up on X-rays. As we have said in this opinion, the plaintiff is competent to establish past pain without medical evidence and this necessarily gives a plaintiff the right to present a claim of a cryptic injury. In indicating his willingness to entertain such a claim, the trial judge was merely stating the law. The plaintiff was not required to present a medical diagnosis, and the trial judge's remark therefore did not supply a necessary element of this case.

▪ It is true that the judge displayed an interest in the insurance liability limits. However, he respected appellant's desire not to disclose the limit and in this respect received the same answer that an inquisitive juror would have received. Curiosity is not evidence of passion or prejudice.

▪ The judge indicated that he had seen the file and knew the facts of the accident which facts had caused the defendant-appellant to concede liability. We do not think this shows prejudice. A judge will know and hear many things in the course of a trial that a jury will not. This is an obvious fact which we assume both counsel considered in deciding whether or not to request a jury trial.

▪ Finally, the judge remarked that he was sympathetic with the plaintiff's deli-

---

4. Justice Blume of this Court was worrying about the same thing when in *1957* he was contemplating an excessive damage claim and observed:

"It is hard to know what verdict or judgment is reasonable in this day of a 'fifty cent dollar'." *Muir v. Haggerty*, 77 Wyo. 280, 314 P.2d 948, 952 (1957).

cate situation with respect to the plaintiff's claim that the accident had impaired his ability to function in his present job. However, this sympathy was of no value to the plaintiff, since the trial judge awarded "0" for future lost wages (plaintiff had argued at trial that the injuries received in the accident retarded his promotion schedule) and awarded only $1,346.42 for past lost wages, an amount that was apparently attributable to the plaintiff's missed work immediately after the accident.

Since we do not find the amount of the awards for past pain and suffering and loss of enjoyment of life to be excessive as a matter of law and since we do not find evidence of passion or prejudice on the part of the trial judge, we affirm these awards.

The judgment of the trial court is affirmed.

ROONEY, Justice, specially concurring.

I believe a cautionary comment is desirable in connection with the holding that "loss of enjoyment" is a separate element of damages.

Although there is a split of authority on whether or not "loss of enjoyment" can be a separate element of damages, I agree that it can be. However, there is obvious danger that an award will include double damages when "pain and suffering" or "disability" (I use the term only as it applies to inability to earn a livelihood) or both are also present in a case in which "loss of enjoyment" may be an element of damages. In such case, "loss of enjoyment" may *be incident only* to one of the other two elements and, therefore, be not properly subject to separate treatment. But it can also exist *beyond* the "pain and suffering" or "disability" and thus be entitled to separate treatment.

In a jury trial, the court should carefully instruct the jury as to the definitions of the separate elements of damages and to their application to the facts of the case so as to avoid an award of double damages.

In this case, tried to the court, the court is presumed to know the law, including the distinction between such elements of damages. It can be presumed to have properly applied such law in awarding damages without duplication, whether labeled "pain and suffering" or "loss of enjoyment".