[No. 44234. En Banc. January 7, 1977.]

THOMAS BITZAN, *Petitioner*, v. ERNEST N. PARISI, ET AL, *Respondents.*

*Charles A. Kimbrough* and *James L. Austin, Jr.,* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow*), for petitioner.

*Jack E. Hepfer,* for respondents.

*Gregg L. Tinker* and *Daniel F. Sullivan* on behalf of Washington State Trial Lawyers Association, amici curiae.

HOROWITZ, J.—This is a personal injury case. The questions raised involve the sufficiency of the evidence to support jury instructions on the recovery for future pain, suffering, disability, and loss of earnings.

On December 14, 1971, a car driven by defendant–husband Ernest N. Parisi in Seattle, Washington, rearended plaintiff Thomas Bitzan's smaller car, while Bitzan was temporarily stopped behind another car at a crosswalk. In a suit by Bitzan for damages, defendant Parisi and wife admitted liability, and Bitzan recovered a verdict for future as well as present damages. Later the trial court granted defendants' motion for a new trial because two of the jury instructions given were unsupported by substantial evidence. On Bitzan's appeal, the Court of Appeals, Division One, affirmed. *Bitzan v. Parisi,* 14 Wn. App. 791, 545 P.2d 578 (1976). We granted review and now reverse.

Instruction No. 5 describes the existing and future damages recoverable. These include damages for disability, pain, suffering, and lost earnings which "with reasonable probability" will occur in the future. The instruction also provided defendants were liable for all damages "proximately caused by the negligence of the defendants," and the award "must be based upon the evidence and not upon speculation, guess or conjecture." These instructions placed the burden of proof of damages by a "preponderance of the evidence" upon Bitzan. In an earlier instruction the court instructed the jury the evidence to be considered "consists of the testimony of the witnesses and the exhibits . . . received . . ." and the jury should "consider all of the evidence introduced by all parties bearing on the question." Still another instruction defined "preponderance of the evidence" to mean the jury "must be persuaded considering all the evidence in the case that the proposition on which he [either party] has the burden of proof is more probably true than not true."

The instructions taken together meant Bitzan had the burden of proving by the evidence in the case it was more probably true than not true that future disability, pain,

suffering, and loss of earnings would occur in the future with "reasonable probability."

The question of what evidence here is necessary to support an instruction on future disability, pain, suffering, and loss of earnings requires an examination of the sufficiency of lay testimony for that purpose including testimony of subjective symptoms as contrasted with objective symptoms. Defendants' exceptions to instruction No. 5 were sufficient to raise these questions. However, on defendants' motion for new trial, the trial court in effect upheld defendants' exceptions to instruction No. 5 and granted defendants a new trial because

There was [prejudicial] error . . . in giving Instruction No. 5 as to elements of future damage and loss for disability, pain, and suffering, and loss of earnings which were based entirely on subjective complaints, as opposed to any substantial medical testimony which would with reasonable medical probability support said future elements of damage . . .

Was the lay testimony sufficient to permit instruction No. 5 to be given? The lay testimony, pertinent to the issues presented, including that of Bitzan, includes the following. Bitzan had three accidents in 1967 with resulting injury to his neck and upper back similar to injuries later sustained in the 1971 accident. At the time of the 1971 accident, Bitzan still had some pain from the 1967 accidents but was able to continue to follow his occupation as a carpenter and to engage in fishing, hunting, and dancing involving movement and exertion of his back.

After the 1971 accident, Bitzan's upper back movement was limited; he suffered from back and neck pain accompanied by loss of sleep following vigorous movement of his back. In time his neck healed but his back injury did not. Although his treatment doctor prescribed drugs and exercises, Bitzan's testimony supported by his witnesses in material respects showed Bitzan continued to experience pain, suffering, disability, and resulting loss of earnings at the time of trial. Bitzan and lay witnesses testified his back

movement was and continued to be limited compared to his condition prior to the 1971 accident; that this limitation adversely affected his participation in his usual recreational activities of hunting, fishing, and dancing; and because of his inability to lift heavy objects resulting from his 1971 accident, Bitzan was forced to quit his job as a carpenter. Bitzan testified the doctors he consulted ultimately told him it was "a situation that you are just going to have to live with." Because of his continued inability to work as a carpenter, he later sold television receivers and then real estate but he earned far less money than he had as a carpenter. The evidence showed the extent of the earnings lost.

There was also medical testimony dealing with Bitzan's physical condition. Dr. Benitez examined Bitzan on June 26 and July 10, 1972. In his testimony he used the words "subjective" and "objective" findings. He testified:

A. Well, pain is subjective. It is something that the patient feels and tells me about, whereas, objective findings is something that we can perceive for ourselves.

Based on Bitzan's subjective complaints of back pain, especially on exertion, Dr. Benitez diagnosed Bitzan's condition as "probably a fibromyocitis which is a term meaning a combination probably of inflamed muscles and inflamed fibrous tissue and includes ligaments and tendons." The doctor testified his diagnosis was based in part on the fact that the symptoms persist despite no objective findings, and "the fact that it doesn't get well as far as we expect." Dr. Benitez testified, however, that X–rays do not normally show muscle or ligament injury to the back, so the doctor must rely on patients' statements to analyze the injury. The doctor concluded that based on Bitzan's complaints, Bitzan could not continue to work in construction. Questioned on the effect of Bitzan's prior back and neck injuries, Dr. Benitez stated that it was difficult to tell if these injuries had increased the severity of the injury caused by the December 14, 1971, accident, but it does happen.

Bitzan consulted Dr. Mullen, a back specialist, on February 17, 1972, and June 19, 1973. Although the doctor's tests revealed no spinal or disc damage, he advised Bitzan to continue physical therapy and to take certain shots. Objective evidence included medical records showing the existence of muscle spasms on the part of Bitzan.

Defendants' examining physician, Dr. Bradley, testified that although he did not find objective symptoms, there was mild tenderness around the left dorsal musculature in response to manipulation of the upper back area. He concluded Bitzan suffered cervical and dorsal injuries as a result of the accident, which showed symptoms with heavy physical activity. Dr. Bradley agreed that a spinal abnormality shown on the X-ray could have been caused by the 1971 accident, and that people who have an injury on top of prior injuries are more prone than others to have difficulty over a longer period of time. Dr. Bradley admitted that recovery in back injuries such as Bitzan's recovery is very individualized, and Bitzan could have symptoms in the future. However, so far as objective symptoms showed, the doctor testified Bitzan could return to his work as a carpenter.

The medical testimony on future damages for the most part was based on Bitzan's subjective symptoms with little backup support based on objective symptoms. There is, however, lay testimony generally to the effect that Bitzan sustained pain, suffering, disability, and loss of earnings from the time of the December 14, 1971, accident to the date of trial on July 23, 1973, a period of over 19 months. For reasons next stated, we hold the lay testimony, reviewed alone, sufficient to support the instruction on future damages.

■■ There is no reason laymen may not testify to their sensory perceptions, the weight of the testimony to be determined by the trier of fact. Physical movement by the injured person can be seen and described by a layman with no prior medical training or skill. *See generally Parris v. Johnson,* 3 Wn. App. 853, 859, 479 P.2d 91 (1970); Annot.,

11 A.L.R.3d 1249 (1967). Furthermore, an injured person can testify to subjective symptoms of pain and suffering, and to the limitations of his physical movements. *See* S. Schriber, *Damages for Personal Injuries and Wrongful Death Cases* 256–59 (1965); S. Sweitzer, *Proof of Traumatic Injuries* § 565 (1961). *See generally* E. Cleary, *McCormick's Handbook of the Law of Evidence* 689–94 (2d ed. 1972).

■ Proof of pain and suffering as late as at time of trial even though subjective in character will warrant an instruction on future damages. The same is true of proof of disability and lost earnings. The continued existence of these elements of damage at the time of trial permits a reasonable inference that future damage will be sustained. Expert medical testimony to this effect may also be given but it is not essential. Such evidence if unfavorable is admissible however to limit recovery. *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P.2d 947 (1934); *Suprunowski v. Brown & White Cab Co.,* 142 Wash. 65, 252 P. 155 (1927); *Parris v. Johnson, supra; Check v. Meredith,* 243 Ark. 498, 420 S.W.2d 866 (1967); *Arkansas Drilling Co. v. Gross,* 179 Ark. 631, 17 S.W.2d 889 (1929); *Loper v. Morrison,* 23 Cal. 2d 600, 145 P.2d 1 (1944); *Carradus v. Lange,* 203 N.W.2d 565 (Iowa 1973); *Nelson v. Tworoger,* 256 Ore. 189, 472 P.2d 802 (1970); Annot., 18 A.L.R.3d 10 (1968); *cf. Carr v. Martin,* 35 Wn.2d 753, 759–60, 215 P.2d 411 (1950).

In cases such as these a future damage instruction can be given even though there is no medical testimony (*Mabrier v. A.M. Servicing Corp.,* 161 N.W.2d 180, 183 (Iowa 1968)), or even if the medical testimony is contrary to plaintiff's testimony of continued pain. *Jones v. Allen,* 473 S.W.2d 763 (Mo. App. 1971). The following quotation from *Jones, supra* at 766, illustrates this point:

As to the lack of evidentiary support for the future damage instruction it may be conceded that no direct evidence was adduced that plaintiff would have disability

or pain in the future although defendant's doctor conceded a person could have difficulty for several years. Plaintiff relies upon the recognized rule that "the long continuance of conditions existing at the hearing of the cause is sufficient to warrant the giving of an instruction on future pain and suffering * * * and 'makes a situation where it is for the jury to determine the probable duration of the injury.'" Harrison v. Weller, Mo.App., 423 S.W.2d 226 . . . The evidence of such conditions may come solely from the plaintiff and need not be corroborated by medical evidence, and in fact may be in conflict with medical evidence on the question. Palmer v. Lasswell, Mo.App., 267 S.W.2d 492 . . . Johnston v. Owings, Mo.App., 254 S.W.2d 993 . . .

Medical opinions of the treating doctor have been received based on subjective symptoms. However, medical opinions of a doctor consulted for purposes of testifying at trial have been limited to findings of objective symptoms— a view sharply criticized in *McCormick, supra* at 694. *See also* D. Smith and S. Henley, *Opinion Evidence: An Analysis of the New Federal Rules and Current Washington Law,* 11 Gonzaga L. Rev. 3, 700–01 (1976) and R. Brachtenbach, *Future Damages in Personal Injury Actions—The Standard of Proof,* 3 Gonzaga L. Rev. 1, 75 (1968), urging adoption of a liberal rule allowing future damages to be proved by a preponderance of the evidence rather than by the standard of reasonable medical certainty or probability. Logically, this view would be applicable whether the evidence be lay or expert.

We do not reach the questions raised concerning the standard or sufficiency of medical testimony, because there was testimony by plaintiff that he was still experiencing pain, suffering, disability, and loss of earnings at the time of trial. That testimony was sufficient to justify instruction No. 5 in the respects challenged.

Defendant also excepted to instruction No. 6. That instruction reads:

If you find that before this occurrence the plaintiff had a preexisting bodily condition which made him more subject to injury than a person in normal health, then

plaintiff is entitled to recover for all injuries and damages which were proximately caused by the occurrence, even though those injuries, due to that condition, may have been greater than those which would have been suffered by a normal person under the same circumstances. Plaintiff is also entitled to recover for the lighting up of the pre-existing condition. There may be no recovery, however, for any results which would have normally followed from the pre-existing condition had there been no accident nor for any physical ailment or disability not caused or contributed to by reason of the accident of December 14, 1971.

Defendant's exception reads:

We would except to Proposed Instruction No. 6. It appears that we are talking about an aggravation situation and it seems to me there is inadequate testimony by anyone that this was an aggravation of a pre-existing condition.

The court granted a new trial because of instruction No. 6 on the ground

[t]hat there was error of law which was prejudicial in giving Instruction No. 6 in that there was no substantial evidence to support said instruction. That, more specifically, there was no medical testimony, based on reasonable medical certainty, that "before this occurrence the plaintiff had a pre-existing bodily condition which made him more subject to injury than a person in normal health" nor was there any evidence to substantiate "the lighting up of the pre-existing condition."

CR 51(f) provides:

The objector shall state distinctly the matter to which he objects and the grounds of his objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made.

■ The exception taken to instruction No. 6 does not specify the paragraph or particular part of the instruction to which objection is made and therefore may properly be considered a general objection to the whole instruction. The general nature of the exception taken is emphasized by the fact the exception treats the instruction as referring generally to "an aggravation situation" or as "an aggravation of a

pre-existing condition." *Cf. Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976); *Johnson v. Tsukahara,* 51 Hawaii 39, 448 P.2d 822 (1968); *Davis v. Angell,* 218 Ore. 443, 345 P.2d 405 (1959).

A general objection or exception is unavailing to raise any issue if any part of the instruction is valid. *Gallamore v. Olympia,* 34 Wash. 379, 75 P. 978 (1904); *Rush v. Spokane Falls & N. Ry.,* 23 Wash. 501, 63 P. 500 (1900); *Jarbet v. Hengst,* 260 S.W.2d 88 (Tex. Civ. App. 1953); *Davis v. Angell, supra; Nelson v. Tanner,* 113 Utah 293, 194 P.2d 468 (1948). *Cf. Nelson v. Mueller,* 85 Wn.2d 234, 533 P.2d 383 (1975); *Pritchett v. Seattle,* 53 Wn.2d 521, 335 P.2d 31 (1959); *Ryan v. Westgard,* 12 Wn. App. 500, 530 P.2d 687 (1975); *Farmers' Union Co-op. Gin Co. v. Squyres,* 193 Okla. 578, 145 P.2d 949 (1944).

Here the last clause of the instruction reading "nor for any physical ailment or disability not caused or contributed to by reason of the accident of December 14, 1971" was separable, clearly valid, supported by the evidence, and even favorable to defendant. If the exception is unavailing, the instruction becomes the law of the case, just as if no exception had been taken. *Whipple v. Lambert,* 73 Wn.2d 952, 442 P.2d 266 (1968); *Agranoff v. Morton,* 54 Wn.2d 341, 340 P.2d 811 (1959). *Cf. Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1960); *Ryan v. Westgard, supra.*

Moreover, if the motion for new trial is based upon error in giving instruction No. 6, neither this court nor the trial court may grant a new trial for such error unless the error is reviewable. It is not reviewable either in this court nor the trial court on motion for new trial if the exception taken at the time of trial was inadequate. *Nelson v. Mueller, supra; Berry v. Howe,* 34 Wn.2d 403, 208 P.2d 1174 (1949); *Harris v. Burnett,* 12 Wn. App. 833, 532 P.2d 1165 (1975); *Ryan v. Westgard, supra; Haslund v. Seattle, supra;* CR 51(f), (g); *Oakes v. Peter Pan Bakers, Inc.,* 138 N.W.2d 93, 10 A.L.R.3d 247 (Iowa 1965); *Honea v. West Virginia Pulp & Paper Co.,* 380 F.2d 704 (4th Cir. 1967); Fed. R. Civ. P. 51.

The court's order granting a new trial for error in instruction No. 6 was based upon claimed error with respect to which no adequate exception had been taken for the reasons discussed. It was therefore improper to grant the new trial based upon that instruction.

■ Bitzan does not assert the insufficiency of defendants' exceptions at trial to instruction No. 6. However, as pointed out in *State v. Badda,* 68 Wn.2d 50, 57, 411 P.2d 411 (1966)(quoting *State v. Hussey,* 188 Wash. 454, 461, 62 P.2d 1350 (1936)) it is our duty to notice a court rule violation when it is involved—the court sua sponte notices the rule violation "'for our own protection and to enforce compliance with the rules of court.'" As stated in *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 623, 465 P.2d 657 (1970):

> Courts are created to ascertain the facts in a controversy and to determine the rights of the parties according to justice. Courts should not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent. A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it.

This rule may be applied to reverse the trial court. *Maynard Inv. Co. v. McCann, supra* at 623. *Huntress v. Huntress' Estate,* 235 F.2d 205, 209, 61 A.L.R.2d 682 (7th Cir. 1956). *Cf. Moulder v. Webb,* 527 S.W.2d 417, 419 (Mo. App. 1975). *See generally* A. Vestal, *Sua Sponte Consideration in Appellate Review,* 27 Fordham L. Rev. 477 (1958–59).

In the instant case only a proper interpretation of CR 51(f) is involved. No new evidence is needed to properly apply the last mentioned rule.

The order granting a new trial is reversed with directions to enter judgment for plaintiff Bitzan on the verdict.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur.

Petition for rehearing denied April 6, 1977.