# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JASON WILKS, | No. 59687-3-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS; STAFFORD CREEK CORRECTIONS CENTER; et. al., | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — In 2022, Jason Wilks filed a lawsuit against the Department of Corrections (DOC), alleging improper treatment for an injury he sustained while in confinement. The trial court entered summary judgment in DOC's favor. Wilks raises several issues on appeal. First, Wilks claims that he filed adequate medical evidence to support his medical malpractice claim against DOC. Relatedly, Wilks asserts he was not required to provide expert medical testimony in support of his medical malpractice claim. Second, Wilks argues that he provided sufficient evidence to support his claim for intentional infliction of emotional distress (IIED). Third, Wilks argues that the court erred in granting summary judgment when it was aware of Wilks's outstanding motions to amend his complaint and request for sanctions. Fourth, Wilks asserts that DOC improperly relied on his unsigned deposition transcript in its motion for summary judgment. Fifth, Wilks asserts that DOC violated the Washington Uniform Health Care Information Act (WUHIA) by disclosing his medical information to DOC's attorney and the trial court without his

authorization. Sixth, Wilks argues that the court erred in not considering his opposition to DOC's motion for summary judgment as well as listing it in the documents considered in the court's order.

We conclude that (1) the trial court did not err in dismissing Wilks's medical malpractice claim because Wilks did not provide expert medical testimony; (2) the trial court did not err in dismissing Wilks's IIED claim because he failed to provide evidence supporting essential elements of his claim; (3) the court did not err in granting summary judgment when Wilks had outstanding motions that were improperly filed with the court and were not noted for a hearing by Wilks; (4) DOC did not improperly rely on Wilks's unsigned deposition because it could be used for any purpose 30 days after the transcript was created under CR 30(e), and Wilks waived any right to challenge the use of his deposition under CR 32(d)(4); (5) Wilks's argument regarding WUHIA is moot, in part, but ultimately fails because DOC was not required to obtain Wilks's authorization to disclose his medical information; and (6) the trial court did not err in not considering Wilks's opposition to DOC's motion for summary judgment in its order because Wilks did not file his opposition. Accordingly, we affirm the trial court.

FACTS

I.    BACKGROUND

In June 2019, Wilks was playing softball at the Stafford Creek Correctional Center (SCCC). Wilks was in the outfield, and the ball was hit in his direction. Wilks fielded the ball and threw it to home base. In doing so, Wilks felt his left arm snap, and he "could immediately tell that it was broken . . . because [he] could no longer move [his] arm." Clerk's Papers (CP) at 413. Wilks notified the officers supervising the game, and DOC medical staff were called to assess Wilks's injury.

After the medical staff triaged Wilks, he was transported to the Grays Harbor Community Hospital. A doctor at the hospital x-rayed his arm and confirmed that it was broken. Specifically, Wilks "sustained a left humeral spiral distal diametaphyseal fracture." CP at 101. A nurse later put Wilks's arm in a "full arm splint and . . . a basic sling." CP at 101. The hospital did not discuss pain management with Wilks because the SCCC would be responsible for overseeing Wilks's recovery.

After being discharged from the hospital, the correctional officers restrained Wilks in "belly chains." CP at 418. According to Wilks, when the correctional officers did so, they had to pull down Wilks's arm, which caused "the hard cast on the back side of the elbow" to crack, and Wilks lost support for his arm. CP at 419. Wilks expressed his discomfort and told the correctional officers that they needed to fix his cast. The correctional officers explained that they would fix Wilks's cast when they got back to the prison. A nurse saw Wilks when he arrived back at the correctional center. When treating Wilks, the nurse created a primary encounter report, and there was nothing in the report indicating that Wilks's "cast was broken, malfunctioning[,] or otherwise defective." CP at 318.

Kenneth Sawyer, M.D., oversaw Wilks's recovery.[1] Wilks was given a "collar and cuff" sling no later than July 10, which he used for several months. Approximately a year after Wilks's injury, his arm healed, but he suffered from a mild mal union.

---

[1] Dr. Sawyer did not directly interact with Wilks. Dr. Sawyer advised the SCCC medical staff on Wilks's treatment.

II.     WILKS'S LAWSUIT

Wilks filed a standard tort claim form with the DOC on January 17, 2022, almost five years after his injury. The Office of Risk Management (ORM) through the Department of Enterprise Services acknowledged receipt of the tort claim on January 21. On May 3, ORM declined Wilks's tort claim, concluding that Wilks's "treatment met or exceeded reasonable medical standards." CP at 28.

Wilks filed a lawsuit against DOC on July 21 in the Thurston County Superior Court. Wilks alleged that the denial and deprivation "of proper care in the treatment of his medical condition," demonstrated a "lack of proper care by" DOC. CP at 14.

On March 7, 2024, Wilks moved to amend his complaint. Wilks sought to amend his complaint to add additional defendants. Specifically, he wanted to name the correctional officers that transported him back from the hospital on the day of his injury. Wilks did not note his motion for a hearing, but he later attempted to do so on May 9.[2] And on March 18, Wilks moved for discovery sanctions under CR 37(b)(2) for alleged perjury. Wilks also failed to note this motion for a hearing.[3]

On April 29, DOC moved for summary judgment. DOC noted a hearing for its motion on May 31. DOC filed a reply to an opposition Wilks purportedly prepared, acknowledging that it had received it, but Wilks opposition was never filed with the clerk's office. On May 30, the trial

---

[2] Wilks noted the hearing on his motion to amend his complaint on May 17. The court did not hear the motion on the noted date because its calendar was full for that day.

[3] On April 15, Wilks sent a letter to the trial court inquiring about the status of his motion to amend his complaint. Wilks also sent a letter to the trial court informing the court that he was struggling to schedule a virtual hearing.

court granted DOC's motion for summary judgment in chambers and struck the hearing. The court

considered the following documents, according to its order:

1. The Defendant Washington State Department of Corrections' Motion for Summary Judgment.
2. Declaration of Jordyn Jones in Support of Defendant Washington State Department of Corrections' Motion for Summary Judgment, with attachments thereto and the *Declaration of Kenneth Sawyer, MD*.
3. Plaintiff's Response to Defendant's Motion for Summary Judgment, *if any*.
4. Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, if any.

CP at 334-35 (emphasis added).

Wilks appeals.

Wilks raises several arguments for the first time on appeal. We include additional facts

relevant to those arguments below.

## ANALYSIS

We review orders granting summary judgment de novo, "'engag[ing] in the same inquiry

as the trial court.'" *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014) (internal

quotation marks omitted) (quoting *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065

(2000)). "A court may grant summary judgment if the pleadings, affidavits, and depositions

establish that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law." *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000);

CR 56(c). A material fact is a "'fact upon which the outcome of the litigation depends, in whole

or in part.'" *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979)

(quoting *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)). "[A]n adverse party may not

rest upon the mere allegations or denials of a pleading" to prove that a genuine issue of material

fact exists. CR 56(e). We view all submitted facts and reasonable inferences in the light most

favorable to the nonmoving party. *Hunt*, 181 Wn.2d at 140.

When reviewing an order granting summary judgment, we only consider "evidence and issues called to the attention of the trial court." RAP 9.12. We may affirm "'a trial court's disposition of a motion for summary judgment or judgment as a matter of law on any ground supported by the record.'" *21st Mortg. Corp. v. Nicholls*, 25 Wn. App. 2d 795, 803-04, 525 P.3d 962 (2023) (internal quotation marks omitted) (quoting *Johnson v. Wash. State. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021)).[4]

Courts "hold pro se parties to the same standards to which it holds attorneys." *Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010). As a result, "pro se litigants are bound by the same rules of procedure and substantive law as attorneys." *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

I.      MEDICAL MALPRACTICE

Wilks argues that he provided sufficient evidence to support his medical malpractice claim against DOC. To that end, he asserts that he was not required to provide expert testimony to support his claim. We disagree.

---

[4] Wilks did not file his opposition to DOC's motion for summary judgment with the trial court. Additionally, he includes several documents in his appendix not filed with the trial court. Because of this, DOC moves to strike a portion of Wilks's opening brief in addition to his attached appendix since these documents were not designated in the record. And because Wilks did not file his opposition to DOC's motion for summary judgment with the trial court, DOC argues that all of his arguments are raised for the first time on appeal and should not be considered by this court.

Under RAP 9.12, we will not consider any document that was not designated in the record. Generally, we do not consider arguments raised for the first time on appeal. RAP 2.5(a). We may, however, waive or alter the requirements outlined by the rules of appellate procedure when doing so would "serve the ends of justice." RAP 1.2(c).

Here, we consider all of Wilks's arguments raised on appeal under RAP 1.2(c). We will not, however, consider any document in Wilks's appendix and opening brief that were not designated in the record. RAP 9.12.

In a medical malpractice action, a plaintiff must establish two elements when pursuing recovery against a healthcare provider. RCW 7.70.040(1). First, the plaintiff must show that "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1)(a). Second, the plaintiff must prove that "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040(1)(b).

If a defendant moves for summary judgment based on the absence of competent medical evidence to establish a prima facie case, the burden shifts to the plaintiff to produce testimony from a qualified expert witness alleging specific facts establishing a cause of action. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "If a plaintiff lacks competent expert testimony to create a genuine issue of material fact with regard to one of the elements of the claim and is unable to rely on an exception to the expert witness testimony requirement, a defendant is entitled to summary judgment." *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018).

"Expert testimony will *generally* be necessary to establish the standard of care," and is *required* on the element of proximate cause. *Berger v. Sonneland*, 144 Wn.2d 91, 110, 26 P.3d 257 (2001) (emphasis added). Expert testimony is not, however, required "'where the want of skill or lack of care is so apparent as to be within the comprehension of laymen and requires only common knowledge.'" *Young*, 112 Wn.2d at 228-29 (internal quotation marks omitted) (quoting *Hart v. Steele*, 416 S.W.2d 927, 932 (Mo. 1967)).

Wilks argues that he was also making a general negligence claim against all DOC staff in addition to his medical malpractice claim. But Wilks failed to assert any such claim before the trial court, and we will not consider such claim on appeal.

When viewing the facts in the light most favorable to Wilks, the nonmoving party, the trial court did not err in granting summary judgment in DOC's favor. In its motion for summary judgment, DOC noted that Wilks failed to present any expert testimony supporting his claim. Wilks argues that much of his alleged mistreatment can be proven by lay witness testimony.[5] But that is not the case. As is evident from Dr. Sawyer's medical notes (separate from Dr. Sawyer's declaration), Dr. Sawyer explained that Wilks's prescribed treatment was "counterintuitive," but it was the accepted method for treating such an injury. CP at 105. This supports the need for expert medical testimony. *See Young*, 112 Wn.2d at 225-26; *Sonneland*, 144 Wn.2d at 110. Consequently, the counterintuitive treatment prescribed by Dr. Sawyer is not a circumstance "'where the want of skill or lack of care is so apparent as to be within the comprehension of laymen and requires only common knowledge.'" *Young*, 112 Wn.2d at 228-29 (internal quotation marks omitted) (quoting *Steele*, 416 S.W.2d at 932). Wilks needed expert medical testimony to establish both that DOC's treatment fell below the standard of care and that their actions were the proximate cause of his harm. RCW 7.70.040(1); *Sonneland*, 144 Wn.2d at 110.

---

[5] In Wilks's opening brief, he relies on *Bitzen v. Parisi*, 88 Wn.2d 116, 558 P.2d 775 (1977), for the proposition that "an injured person can testify to subjective symptoms of pain and suffering," and to "the limitations of his physical movements" to establish future damages. Br. of Appellant at 32, 35 (quoting *Bitzen*, 88 Wn.2d at 121). Wilks may be able to testify to his alleged injuries if he were able to establish that DOC's conduct fell below the standard of care for the purpose of establishing future damages. *Bitzen*, 88 Wn.2d at 121-22. But as previously explained, to establish that DOC's conduct fell below the standard of care requires expert medical testimony, which Wilks did not provide. *Sonneland*, 144 Wn.2d at 110.

Because Wilks did not provide expert testimony in support of his medical malpractice claim, DOC was entitled to summary judgment as a matter of law. Therefore, the court did not err in dismissing his claim.[6]

II.    IIED

Wilks argues that he provided sufficient evidence to support his IIED claim. We disagree.

To succeed in an IIED claim, a plaintiff must prove "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). "Outrageous conduct is conduct 'which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim Outrageous!'" *Reid v. Pierce County*, 136 Wn.2d 195, 201-02, 961 P.2d 333 (1998) (internal quotation marks omitted) (quoting *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 448, 341 P.2d 859 (1959), *overruled in part by Nord v. Shoreline Savs. Ass'n*, 116 Wn.2d 477, 484, 805 P.2d 800 (1991)).

Wilks's IIED claim fails for two reasons. First, he does not provide any evidence illustrating that DOC's conduct was "extreme and outrageous." *Kloepfel*, 149 Wn.2d at 195. Second, even if we were to assume that DOC's conduct was "extreme and outrageous," Wilks does not present any evidence that DOC's actions were intentional or reckless. *Id.*

---

[6] Because we conclude that Wilks failed to provide expert testimony in support of his medical malpractice claim, we need not address his remaining arguments regarding the evidence in the record and whether it creates a genuine issue of material fact. *Celotex*, 477 U.S. at 323 (explaining that "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" (quoting FRCP 56(c))).

Because Wilks failed to provide evidence of two essential elements of his IIED claim, DOC was entitled to summary judgment as a matter of law. Therefore, the trial court did not err in dismissing his claim.

III.    THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT WHILE THERE WERE OUTSTANDING MOTIONS

Wilks argues that the trial court erred in granting summary judgment while his motion to amend his complaint and his motion for sanctions were pending. We disagree.

The Thurston County Superior Court Rules (LCR) provide:

The moving party in a civil case . . . shall file their motion, brief, and any supporting declarations at or before the time of scheduling the matter through *a notice of hearing*. Parties are strongly encouraged to use the current, court-approved notice of hearing form, which is available at the clerk's office, and shall provide all information required by the notice of hearing form. *Hearings attempted to be scheduled in violation of this rule are subject to not being scheduled or being stricken*.

LCR(7)(b)(7) (emphasis added).

Here, Wilks filed two motions but failed to note them for hearing as anticipated by Thurston County LCR(7)(b)(7). Again, Wilks filed a motion to amend his complaint and a motion for discovery sanctions for alleged perjury. Neither motion was originally noted for a hearing. Wilks did subsequently note a hearing for his motion to amend his complaint for May 17, 2024, but the court's calendar was already full, and Wilks did not schedule the hearing on a day where the court had availability. Consequently, the trial court would have been unaware of Wilks's outstanding motions. Wilks's argument fails.

Therefore, the trial court did not err in granting DOC's motion for summary judgment in light of Wilks's pending, but not noted or considered, motions.

10

IV.    DOC'S RELIANCE ON WILKS'S UNSIGNED DEPOSITION

Wilks argues that the trial court erred by allowing DOC to rely on his unsigned deposition for summary judgment. We disagree.

Under CR 30(e), a witness may review their deposition to verify the accuracy of their testimony. Regarding timing of when the deposition must be signed and returned, the rule provides:

> If the deposition is not signed by the witness within 30 days of its submission to the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, *if any*, given therefor; and the deposition may then be used *as fully as though signed* unless on a motion to suppress under rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

CR 30(e) (emphasis added). The rules, however, explain that errors pertaining to "the manner in which the testimony is transcribed or [how] the deposition is . . . dealt with by the officer under rules 30 and 31 *are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect* is, or with due diligence might have been, ascertained." CR 32(d)(4) (emphasis added).

Here, Wilks's challenge to his unsigned deposition is unavailing. Following Wilks's deposition, Wilks informed DOC that he wanted to review his deposition and reserved his signature. The reporter that transcribed the deposition sent the transcript to Wilks's correctional facility, addressing the document to both Wilks and his DOC counselor. Wilks maintains that he did not receive the transcript and surmises that this was a product of "deceit." Br. of Appellant at 20. Under CR 30(e), Wilks's unsigned deposition became subject to use after 30 days of its submission. Wilks did not challenge the deposition on any basis before the trial court.

Consequently, any alleged errors regarding Wilks's deposition were waived, and it could be used for any purpose. CR 30(e); CR 32(d)(4).

Therefore, the trial court did not err by allowing DOC to rely on Wilks's unsigned deposition for its summary judgment motion.[7]

V.       DOC'S ALLEGED VIOLATION OF WUHIA

Wilks argues that DOC violated WUHIA because he did not authorize the disclosure of his medical information. DOC argues that the issue is moot, but maintains that the disclosure of Wilks's medical information did not violate WUHIA. This issue is moot, in part, and otherwise, Wilks's argument fails.

A.       Mootness

"Generally, we will not review a moot case." *In re Dependency of L.C.S.*, 200 Wn.2d 91, 99, 514 P.3d 644 (2022). "A case is moot when the appellate court can no longer provide effective relief." *Id*. at 98.

Here, DOC argues that the issue is moot because Dr. Sawyer's declaration was never filed with the trial court. To the degree that Wilks is arguing the use of Dr. Sawyer's declaration in DOC's motion for summary judgment violated WUHIA, DOC is correct. DOC confirmed in its response to this court's order that Dr. Sawyer's declaration was not filed with the trial court. As a result, this court cannot provide effective relief on this aspect of Wilks's argument, and it is moot.

---

[7] Wilks relies on *Our Lady of Lourdes Hosp. v. Frankly County*, 120 Wn.2d 439, 452, 842 P.2d 956 (1993), for the proposition that "'[u]nsigned affidavits should not be considered in [a] ruling on summary judgment motions.'" Br. of Appellant at 21. A declaration is not an affidavit, and as previously discussed, CR 30(e) permits the use of an unsigned declaration as if it were signed 30 days after being submitted to a witness. Again, Wilks had the opportunity to file a motion to suppress the use of the unsigned declaration, but he did not do so. CR 32(d)(4).

But Wilks is also arguing that Dr. Sawyer disclosing Wilks's medical information to DOC's attorney without Wilks's authorization violated WUHIA. Br. of Appellant at 37 ("Kenneth Sawyer released personal and confidential medical information and records to . . . *the defendant's lawyer in this case* . . . without written consent," which violated WUHIA. (Emphasis added.)). The analysis does not turn on whether Dr. Sawyer's declaration was filed but focuses instead on the disclosure of Wilks's medical information to DOC's attorney. Consequently, this court could provide effective relief, and this aspect of Wilks's argument is not moot.

B.      WUHIA

WUHIA prohibits a health care provider from disclosing "health care information about a patient to any other person without the patient's written authorization." RCW 70.02.020(1). There are, however, exceptions. A patient's authorization, is not required when the disclosure is "[t]o any other person who requires health care information for . . . *legal . . . services* to, or other health care operations for or on behalf of the health care provider or health care facility." RCW 70.02.050(1)(b) (emphasis added).

DOC (including Dr. Sawyer) did not need Wilks's authorization to disclose his medical information to the attorney representing DOC. Wilks put the treatment for his injury and his associated medical information directly at issue by filing this action. As a result, the disclosure fell squarely within an exception contemplated under RCW 72.02.050(1)(b) because the disclosure was related to legal services for DOC who acted as a medical provider and/or medical facility for Wilks. To argue otherwise is disingenuous.

Therefore, DOC did not violate WUHIA by disclosing Wilks's medical information without prior authorization.[8]

VI. THE TRIAL COURT'S ORDER & WILKS'S OPPOSITION TO DOC'S MOTION FOR SUMMARY JUDGMENT

Finally, Wilks argues that the court erred by failing to consider his pleadings in opposition to DOC's motion for summary judgment and that it erred in failing to list his opposition as a document considered in the order. We disagree.

Wilks failed to file his opposition to DOCs motion for summary judgment. Accordingly, the trial court was justified in not considering it, and therefore need not list it as a document the court considered.

If the trial court did consider Wilks's opposition, it was not filed and is not part of the record before us on review. Consequently, we cannot consider it. RAP 9.12. Nevertheless, on de novo review, as discussed above, Wilks failed to present evidence supporting essential elements of the two causes of action alleged in his complaint.

We conclude that the trial court's failure to consider Wilks's opposition, as well as omitting the pleading as a document considered in its order granting summary judgment, was not erroneous.

---

[8] Wilks relies on *Gingrich v. Unigard Sec. Ins. Co.*, 57 Wn. App. 424, 428-29, 788 P.2d 1096 (1990), for the proposition that that DOC's attorney's and Dr. Sawyer's declarations in support of DOC's motion for summary judgment cannot be relied on because of credibility issues. Because Dr. Sawyer's declaration was not filed, we need not address this issue. Regarding DOC's attorney's declaration, Wilks has not presented any admissible evidence independent from the allegations in his complaint that would demonstrate issues of credibility, so his reliance on *Gingrich* is unfounded.

CONCLUSION

Accordingly, we affirm. [9, 10]

---

[9] Throughout Wilks's briefing, he argues in passing that he was denied due process because he did not receive a hearing regarding the various motions filed with the trial court, nor did he have the opportunity to argue his case before a jury. Both arguments are meritless. Courts have held that "[p]rocedural due process . . . does not mandate oral argument on a written motion . . . so long as [a party] is given the opportunity to argue in writing his or her version of the facts and law." *State v. Bandura*, 85 Wn. App. 87, 92-93, 931 P.2d 174 (1997). And a party's Seventh Amendment right to a jury is not infringed upon where summary judgment is properly granted. *LaMon v. Butler*, 112 Wn.2d 193, 199 n.5, 770 P.2d 1027 (1989) ("When there is no genuine issue of material fact, . . . summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial.").

Here, Wilks had the opportunity to argue for or against the various motions filed through the course of the litigation below, but for one reason or another, he failed to do so. And because we conclude that summary judgment was properly granted in DOC's favor, Wilks's constitutional right to a jury trial was not infringed. *Id.*

[10] As discussed above, Wilks's claim for medical malpractice fails because he did not provide expert medical testimony supporting two essential elements of his claim. Because of this reality, the inclusion of Dr. Sawyer's declaration was ultimately unnecessary. But we take this opportunity to address an irregularity that resulted in futile briefing for the parties and wasted time for the court. DOC does much to argue the merits of the care provided by Dr. Sawyer. In doing so, DOC repeatedly relies on the declaration of Dr. Sawyer. And DOC's motion for summary judgment was replete with references to Dr. Sawyer's declaration. But DOC did not file Dr. Sawyer's declaration with the trial court, and says so in its brief. Accordingly, the declaration was not part of the record before us. Yet the order granting summary judgment *explicitly* listed Dr. Sawyer's declaration as a document considered by the trial court. It is unclear how the trial court could have relied on an unfiled document to grant summary judgment to the DOC. If the declaration was provided to the trial court, perhaps via a working copy, it should have nevertheless been filed. And if it was provided via working copy, this fact is an albatross to DOC's complaint before us that Wilks's opposition should not be considered because he provided his opposition to DOC's motion for summary judgment via working copy only. What is more, even if a declaration contains non-disclosable information it could nonetheless be filed under seal. This would ensure the declaration would be provided to this court to enable de novo review. Absent the declaration, the admissibility of counsel's statements, in memoranda and briefing that relay statements by declarant Dr. Sawyer is questionable. Summary judgment proceedings require admissible evidence. CR 56.

15

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Cruser, C.J.

_____
Che, J.